966 F.2d 1457
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Benjamin A. POTTS, Defendant-Appellant.
 No. 91-2105.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 19, 1992.[1]
Decided June 9, 1992.
 
 1
 On Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division; No. 90 CR 75, Sarah Evans Barker, District Judge.
 
 
 2
 S.D.Ind.
 
 
 3
 AFFIRMED.
 
 ORDER
 
 4
 Benjamin Potts presents a fifth amendment challenge to his conviction for threatening the lives of the President of the United States and a United States District Court Judge. We affirm the conviction.
 
 I. FACTS
 
 5
 Benjamin Potts was incarcerated in the United States Penitentiary in Terre Haute, Indiana for an unrelated matter. Extremely unhappy with his conviction, Potts wrote and mailed two letters. In a letter to the district court judge who presided over a civil case involving him, Potts threatened to kill the judge, as well as kill his "boss", President George Bush. In a certified letter to President Bush, Potts threated Bush, Mrs. Bush, Millie the dog, the district court judge, and another federal judge who presided over his criminal case. Potts signed and wrote his inmate number on both letters, and included his return address on the envelopes. The district court judge forwarded the letter to the FBI, who along with the Secret Service, sent an agent to investigate the matter. Only after agents began their investigation was the letter to President Bush discovered.
 
 
 6
 One FBI agent and one Secret Service agent visited Potts in Terre Haute. Potts was handcuffed and prison guards waited outside the room during the interview. The officers introduced themselves, and Potts was read his Miranda rights. He answered affirmatively when asked if he understood those rights. Potts was shown a copy of the letter which was sent to the district judge. The agents began questioning him, but Potts stated that he "had nothing to say" about the letter. Potts was then asked if he would answer some personal history questions, unrelated to the threatening letter. He agreed. When the agents asked Potts for what crime he was incarcerated, he became very agitated and spoke of his prior cases, verbally threatening both of the district court judges. At that time, he acknowledged writing the letter to the district judge who presided over his civil case, and informed the agents that he had also written a threatening letter to President Bush. Potts agreed to be photographed during that interview. Potts was charged with the crime involving both letters and later was fingerprinted. In response to a grand jury supoena, Potts gave handwriting exemplars. All of this evidence was produced during Potts' jury trial which led to his conviction.
 
 II. ANALYSIS
 A. Miranda
 
 7
 In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966), the Supreme Court held that warnings must be given to a suspect to protect their Fifth Amendment rights. The warnings are required when conducting an in-custody interrogation. Id. 384 U.S. at 467, 86 S.Ct. at 1624. The district court concluded during the suppression hearing that Potts was not in custody, although the issue was not disputed at the time. The district court then went on to hold alternately that the agents did not violate Potts' right to cut-off questioning. On appeal, Potts argues that he was in custody and Miranda applies. The government adopts a different position, and argues that despite Potts' custodial status for the previous crime, he was not in custody for Miranda purposes during the interview at issue. We can assume without deciding for purposes of this appeal that Potts was in custody during the meeting with federal agents.
 
 B. Interrogation
 
 8
 If the agents should have known that their words or actions were reasonably likely to elicit an incriminating response, then those words or actions are considered interrogation. Rhode Island v. Innis, 446 U.S. 291, 302, 100 S.Ct. 1682, 1690 (1980). The agents questioned Potts, assuming they would receive a response. Questions limited to information necessary to process a suspect once he has been arrested are not reasonably likely to elicit an incriminating response. United States v. Edwards, 885 F.2d 377, 385 (7th Cir.1989). Therefore routine queries regarding name, address, hunger, and thirst do not constitute Miranda violations.
 
 
 9
 Potts' situation was distinguishable from the "routine question" situation. First, Potts was not arrested for the crime at the time the agents asked him to provide background information. Second, Potts was asked for what crime he was imprisoned, different from the standard processing questions. However, the question was not directly related to the investigation of the threatening letters. In this factual context, a question asking for what crime the suspect was imprisoned did not violate Miranda. Edwards, 885 F.2d at 377. Also, the diatribe Potts gave as an answer was far beyond that which a reasonable person would believe would elicit an incriminating response. Cf. United States v. D'Antoni, 856 F.2d 975, 981 (7th Cir.1988); cf. Robinson v. Percy, 738 F.2d 214, 220 (7th Cir.1984) (subsequent questions probed for background information that was related to the crime and was reasonably likely to elicit an incriminating response.)
 
 
 10
 Nonetheless, even if the line of questioning was interrogation that officers should know would result in an incriminating response, Potts' Miranda warnings had been issued just moments before. Potts' agreement to answer biographical information was a selective waiver of his Miranda rights. United States v. Amaro, 816 F.2d 284, 286 (7th Cir.1986). Potts is familiar with the legal processes, and although the custodial setting may be considered coercive, Michigan v. Mosley, 423 U.S. 96, 103, 96 S.Ct. 312, 326 (1975), the custodial setting was unavoidable in these circumstances. Also, a large quantity of evidence existed that would have resulted in Potts' conviction. Under the doctrine of Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828 (1967), the letters with fingerprints that could be matched to Potts' fingerprints on file, as well as the fact that the letters bore Potts' signature and inmate number, plus the return address and inmate number on the envelopes, would be enough to find that any constitutional error was harmless beyond a reasonable doubt. This evidence is overwhelming and would result in Potts' conviction without his incriminating statements. Although the letter to President Bush was not discovered until after the agents were told of its existence, it was a certified letter and would have inevitably been discovered without Potts' statements. See Nix v. Williams, 467 U.S. 431, 446, 104 S.Ct. 2501, 2510 (1984).
 
 III. CONCLUSION
 
 11
 For these reasons, the district court decision denying suppression of the incriminating statements and the defendant's subsequent conviction is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs