UNITED STATES of America,
Plaintiff-Appellee,

v.

Filemon AMARO, Defendant-Appellant.

No. 86–1628.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 10, 1986.*

Decided Jan. 13, 1987.**

Opinion April 6, 1987.

Lee T. Lawless, Feb. Pub. Defender, St. Louis, Mo., for defendant-appellant.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

** This appeal was originally decided by unreported order on January 13, 1987, 810 F.2d 1167. *See* Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

Laura J. Jones, Office of U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before CUMMINGS and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.

PER CURIAM.

Defendant-appellant Filemon Amaro was convicted in the district court of voluntary manslaughter of a fellow inmate, an offense he committed while incarcerated at the Marion, Illinois federal penitentiary in violation of 18 U.S.C. § 1112. After being sentenced to a ten-year period of confinement, Amaro appeals. He argues the district court committed reversible error in requiring his inmate witnesses to wear restraints while testifying, in admitting a statement he made during custodial interrogation which supposedly violated his *Miranda* rights, and in improperly excluding evidence of the history of violence at the Marion penitentiary in support of his theory of self-defense. We affirm.

## I.

Amaro alleges the district court erred in requiring his inmate witnesses to testify in front of the jury while wearing physical restraints. He argues that requiring his witnesses to wear handcuffs and leg irons [1] without holding a hearing on the necessity of such measures detracted from his witnesses' credibility and harmed his defense.

While as a general rule a defendant has a right to have his witnesses appear before a jury free from shackles or other physical restraints, this right is not absolute. *Harrell v. Israel*, 672 F.2d 632, 635 (7th Cir.1982) (per curiam). Upon a showing of extreme need, a trial court may order physical restraints at trial where it has reason to believe it is necessary to maintain the security of the courtroom. *Id.* at 635–36 (citing *Loux v. United States*, 389 F.2d 911, 919 (9th Cir.), *cert. denied,*

393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968)). The trial judge has wide discretion, however, in determining whether this standard is met. *Harrell,* 672 F.2d at 636.

One such justification for the use of restraints is the witnesses' history of violence in the face of maximum security precautions, because there is grave danger of their attacking people in the courtroom or trying to escape. *United States v. Fountain,* 768 F.2d 790, 794 (7th Cir.1985). One of Amaro's witnesses, Norman Scott, had fire-bombed another inmate while he was incarcerated in 1981, and he was convicted of assault on a prison officer one month before Amaro's trial. No such showing of violence in the face of maximum security precautions was made, however, as to Amaro's other two inmate witnesses. It is not enough for the government to show that the use of such restraints on the defendant or one of his witnesses was required in order to justify restraints on all of the inmate witnesses. *Harrell,* 672 F.2d at 636.

Where the trial judge, however, makes every effort to prevent the jury from becoming aware of the restraints, and the record shows he was successful in so doing, this court has held that the failure to demonstrate the requisite need for restraints was not reversible error. *Id.* at 636–37. Here, the district court took every precaution to prevent the jury from viewing the restraints by placing the inmate witnesses on the stand before the jury entered the courtroom. In addition, the judge did not require the people in the courtroom to rise when he entered, so that the restraints would not be noticed. Insofar as the record shows the court was successful in preventing the jury from becoming aware of the restraints.

Furthermore, because Amaro was charged with voluntary manslaughter of a fellow inmate, the jury was required to know that both Amaro and his witnesses were inmates of a maximum security prison. "Given the nature of such institutions,

---

1. Amaro claims his witnesses were required to wear waist chains as well as leg irons and handcuffs. The record reveals, however, that the court specifically ordered that Amaro would wear handcuffs and leg irons, and that it would follow the same procedure for the inmate witnesses.

it is not unreasonable to assume that the jury would naturally expect that when inmates appear in court, either as parties or witnesses, adequate security measures would be taken." *Id.* at 638. Any prejudice caused by the restraints was mitigated by the jury's awareness that the witnesses in the case were prison inmates and guards; hence, the "shackles could not have come as much of a surprise," *Fountain,* 768 F.2d at 794, especially since Amaro emphasized throughout the trial that the Marion penitentiary houses the worst, most assaultive inmates in the entire prison system.

Finally, we note that Amaro raised no objection to the district court's shackling order when it was issued. We find the fact that Amaro did not object supportive of our conclusion that the trial judge did not abuse his discretion; had some objection been made, fuller consideration could have been given the issue of insuring courtroom security and lesser alternatives considered. *See Harrell,* 672 F.2d at 637. Amaro's claim that he received no notice that the government requested the restraints is without merit. The record reveals that the government requested that the witnesses be under restraints before the pretrial conference. At the pretrial conference, the court informed counsel that it would not decide the matter until later in the trial, giving Amaro ample time to prepare any argument against the restraints or at least to object. Thus, we conclude that the district court did not commit reversible error in ordering the three inmate witnesses shackled.

## II.

■ Amaro also contends that his custodial statement was inadmissible because it was made in violation of his *Miranda* rights. The record reveals that Amaro was interviewed by two FBI agents and two prison staff officials on the morning of the incident in question. Amaro was advised of his rights and acknowledged that he understood them. He then stated that he did not want to talk to the FBI agents, but he indicated he would talk to the prison officials. The two FBI agents and a prison official left. Amaro then gave a statement

to the remaining prison official indicating that the altercation was just between the victim and him, and no one else was involved.

While the Supreme Court has stated that a defendant's right to cut off questioning must be scrupulously honored, *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), it has also recognized that the defendant can control the circumstances of the interrogation, such as the subjects discussed and the duration of the interrogation. *Michigan v. Mosley,* 423 U.S. 96, 103–04, 96 S.Ct. 321, 326–27, 46 L.Ed.2d 313 (1975). That is exactly what Amaro did here when he elected to talk to the prison officials and not to the FBI agents. He selectively waived his right to remain silent by indicating he would respond to some questioners, but not to others, and there is no evidence in the record that the FBI agents did not completely respect that limitation. *See United States v. Thierman,* 678 F.2d 1331, 1335 (9th Cir.1982).

## III.

■ Amaro claims that the district court improperly excluded evidence of the climate of constant fear at the Marion federal penitentiary. Specifically, he argues that the district court should have admitted a report and recommendation of a district court magistrate in an unrelated civil case which allegedly established that there was a history of assaults at the Marion penitentiary. Amaro avers that this evidence was relevant to his theory of self-defense because it tended to prove that his use of force against the victim was reasonable. *See, e.g.,* Seventh Cir. Fed. Crim. Jury Instruction 4.01 (stating that a person is justified in using force intended or likely to cause death only if he reasonably believes such force is necessary to prevent death or great bodily harm to himself).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. This court has recognized that the federal rules of evidence and practice favor evidence being admitted rather

than excluded if it has any probative value at all. *United States v. Anderson*, 798 F.2d 919, 926 (7th Cir.1986) (citations omitted). Nevertheless, the trial court is vested with broad discretionary powers in determining the relevancy of evidence, *United States v. Green*, 735 F.2d 1018, 1026 (7th Cir.1984) (quoting *United States v. Sweeny*, 688 F.2d 1131, 1144 (7th Cir.1982)), and in *United States v. Vretta*, 790 F.2d 651, 655 (7th Cir.1986), we stated that "we may find error in a district court's evidentiary decisions only if the 'court clearly abused its discretion.'" (quoting *United States v. Peco*, 784 F.2d 798, 800 (7th Cir.1986)).

Here, there was no abuse of discretion. By Amaro's own explanation, the report would have shown a history of assaults in the institution during a period before 1980. The altercation in this case which resulted in the death of an inmate occurred in 1984, a date not within the time frame of the magistrate's report. Because the report would not have been relevant to the state of the prison in 1984, when the altercation took place, and Amaro did put in evidence of the assaultive nature of the inmates at Marion, the district court did not abuse its discretion in not admitting it into evidence. Therefore, the judgment of the district court is

AFFIRMED.