Edward LEMONS, Plaintiff–Appellant,

v.

Captain Marvin SKIDMORE, Lieutenant Jack Durham, and Correctional Officer Robert Gaither, et al., Defendants–Appellees.

No. 90–2679.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1992.

Decided Feb. 9, 1993.

---

Barry Levenstam, Jerold S. Solovy, Cathryn E. Albrecht (argued), Jenner & Block, Chicago, IL, for plaintiff-appellant.

Robert G. Toews, Office of the Atty. Gen., Chicago, IL (argued), for defendants-appellees.

Before CUDAHY and EASTERBROOK, Circuit Judges, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

Edward Lemons was a prisoner in the Segregation Unit at the Pontiac Correctional Center in 1986 (he is currently incarcerated elsewhere). He filed a § 1983 complaint *pro se* in June 1986 charging that in January 1986 the defendants had attacked and beaten him so severely that they violated his Eighth Amendment rights. The events took place during a shakedown, in which prisoners are handcuffed and removed from their cells while their cells are searched for contraband. Lemons testified that he thought it was not a real shakedown, but that they were telling him that to get him in handcuffs and attack him. Thus, when ordered to come to the front of his cell and cuff up, he refused and shouted that they were going to kill him. He asked for a counselor (counselors were sometimes available during a shakedown), but none was available. The defendants described him as ranting and raving. Finally the defendants decided to enter the cell and subdue him. They testified that he was hit only once, with a bare fist, after he first attacked them. He claims that he was hit repeatedly with fists wrapped in handcuffs, and that this was excessive force.

His suit went to trial and a lawyer was appointed to represent him. Before trial his attorney asked that during the trial Lemons not have to appear in the handcuffs and leg irons in which he was

---

[*] The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

brought to court. The attorney noted the substantial number of court officers and marshals in the room—and in addition that the five defendants were uniformed prison guards—and asked if the magistrate judge really thought any restraints were necessary, especially when weighed against the prejudice to the defendant before the jury. Magistrate Judge Kauffman stated:

> Well, the position I take is since Mr. Lemons is in the custody of the Department of Corrections, they set the rules for how he will be restrained, if at all. (1 Tr. 5)

Predictably, someone from the Department of Corrections stated that it was their policy to keep the restraints in place. Magistrate Judge Kauffman replied, "Okay, you are in charge." (1 Tr. 6) Lemons was required to attend and testify in both handcuffs and leg irons.

■ The magistrate judge directed a verdict for one defendant (Skidmore); the jury found for the remaining defendants, and this appeal followed. The main claim on appeal is that the jury was prejudiced by viewing Lemons in handcuffs and leg irons, particularly since he had to walk before them to demonstrate his injuries, and that a new trial should be ordered. The second argument on appeal has to do with the jury instructions. The magistrate judge never defined excessive force. However, there was no objection made at the time, and this claim is therefore waived.[1]

\* \* \*

■ This is a case of first impression in the Seventh Circuit.[2] At first glance, and based on the parties' briefs, this case presents a question of what is required for a

fair trial and due process. There are many cases dealing with the shackling of defendants in criminal cases, a practice which has been found to violate the constitutional right to a fair trial except in cases of great need. While these cases involving criminal defendants are not controlling in a case involving a civil plaintiff, they do provide the guidance of an analogous situation. The defendants dismiss these cases entirely, and rely on another line of cases dealing with the rights of prisoners to have access to courts for bringing civil suits, also based on the Constitution. Finally, although not argued by either party, this court also has supervisory authority under which we may require trial courts "to follow procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution." *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

■ All three analyses compel the same conclusion in this case: The magistrate judge abused his discretion by relying on the self-serving opinion of fellow penal officers of the defendants and not holding a hearing to determine what, if any, restraints were necessary, taking no steps to minimize the prejudice to Mr. Lemons in having him appear to be a violent and dangerous person who required leg irons and handcuff restraints, and in failing to give a curative instruction or take any other ameliorative steps.

Under the principle enunciated in *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1938), we will not decide a constitutional

---

1. The Seventh Circuit ruled explicitly in *Deppe v. Tripp,* 863 F.2d 1356, 1362 (7th Cir.1988) that there was no plain error exception to help parties who did not object to jury instructions in a civil trial. Inexplicably, neither party found or cited this case when they briefed this appeal. The defendants submitted it as supplemental authority—even though it was decided long before they briefed the case—and the plaintiffs responded by asking to file a supplemental brief urging the court to overturn *Deppe* and return to a case by case determination of whether parties will be bound by waiver. We decline to do so.

2. In fact, we have found only two other courts that have addressed the use of shackles in a civil case, and one of those was a civil commitment proceeding. *Tyars v. Finner,* 709 F.2d 1274, 1284 (9th Cir.1983) (requiring subject of involuntary commitment proceedings to appear in shackles violated petitioner's rights under the due process clause). *Holloway v. Alexander,* 957 F.2d 529 (8th Cir.1992) (as a general rule plaintiffs should not have to appear in court in shackles, but in this case the need was high and the risk of prejudice was low, so shackles were approved).

question when a case can be decided on other grounds. However, in developing common law rules under our supervisory authority, it is only sensible to examine analogous precedents for our guiding principles rather than simply enacting our own personal opinions, even if those precedents discuss constitutional questions which we do not reach here.

■ There is a constitutional right to a fair trial in a civil case. *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 248 (7th Cir.1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976); *Bailey v. Systems Innovation, Inc.*, 852 F.2d 93, 98 (3d Cir.1988) ("fairness in a jury trial, whether criminal or civil in nature, is a vital constitutional right."). It is difficult, but essential to maintain this right for prisoner-plaintiffs. *Harris v. Davis*, 874 F.2d 461, 466 (7th Cir.1989) (Ripple, J. dissenting), *cert. denied*, 493 U.S. 1027, 110 S.Ct. 735, 107 L.Ed.2d 754 (1990). The defendants correctly point out that civil litigants are entitled to a fair trial, not a perfect one, and that a new trial will not be ordered unless there was an error that caused some prejudice to the substantial rights of the parties. *MCI v. AT & T*, 708 F.2d 1081, 1173 (7th Cir.), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983).

A long line of criminal cases has held that neither the defendant nor witnesses for the defense may be required to testify in shackles unless there is an "extreme need." *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970):

> [E]ven to contemplate such a technique, much less to see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.

This standard applies whether the shackles and gags are used to quiet a disruptive defendant as in *Allen* or to prevent the defendant from escaping or causing injury. *See Harrell v. Israel*, 672 F.2d 632, 635 (7th Cir.1982).

While these cases involved criminal defendants and reached the constitutional question, which we do not here, the rationale for the rulings is directly relevant to this case. The courts found that the appearance of the defendant in shackles would prejudice the jury, causing them to believe that the person was dangerous. In *Harrell*, 672 F.2d at 635, the court stated that "courts must guard against practices which *unnecessarily mark the defendant as a dangerous character* or suggest that his guilt is a foregone conclusion." (emphasis supplied) While the plaintiff in this case was already a convicted felon, whether or not he was a dangerous person, one who was prone to outbursts of violence, was central to the trial of his case.

The defendants argue that there was no prejudice because the jury knew that Lemons was a convicted felon. However, not all convicted felons are so dangerous and violent that they must be brought to court and kept in handcuffs and leg irons. In a criminal case, the appearance of the defendant in shackles may prejudice a jury by weakening the presumption of innocence which the defendant is entitled to. In a civil case, the plaintiff is still entitled to a fair trial in which the jury decides the case based on admissible evidence. The shackles suggest to the jury in a civil case that the plaintiff is a violent person. Since plaintiff's tendency towards violence was at issue in this case, shackles inevitably prejudiced the jury. *Cf. Holloway, supra* (because the case involved living conditions "the plaintiff's status as a dangerous felon has no bearing on the issue the jury must decide," and therefore he was not prejudiced by having to appear in shackles).

While we have determined that being forced to appear in handcuffs and leg irons does prejudice to the plaintiff in a case such as this one, that does not end our inquiry. Even in the cases of criminal defendants, under the constitutional right to a fair trial, it is still permissible to require

the party to appear in shackles if there is "extreme need." Thus we must consider what procedures should be followed, and compare them to what happened in this case.[3]

In *United States v. Amaro,* 816 F.2d 284, 285 (7th Cir.), *cert. denied,* 481 U.S. 1031, 107 S.Ct. 1961, 95 L.Ed.2d 532 (1987), we defined the extreme need standard as "necessary to maintain the security of the courtroom." The standards courts should use to determine the existence of need were discussed in *Amaro* and *Harrell, supra.* The primary focus is on the prisoner's "history of violence in the face of maximum security precautions." *Amaro* at 285. In *Harrell* the court noted that the prisoner in question had never attempted to escape or disrupt a trial. *Harrell* at 636. The trial judge has wide discretion in determining whether that standard has been met. *Id.* The preferred procedure is for the trial judge to hold a brief hearing before trial at which the state may try to prove that restraints are necessary. *United States v. Garcia,* 625 F.2d 162 (7th Cir.), *cert. denied,* 449 U.S. 923, 101 S.Ct. 325, 66 L.Ed.2d 152 (1980).

■ There was no such hearing held in this case. In fact, the magistrate judge did not give any individual consideration to this issue. He stated that since Lemons was in custody, he would leave the decision entirely in the hands of the Department of Corrections. The judge may not delegate his discretion to another party. While he could have consulted the Department of Corrections employees or court security officers, and listened to their opinions and the reasons in support of them, he had to consider all the evidence and ultimately make the decision himself. *United States v. Samuel,* 431 F.2d 610, 615 (4th Cir.1970).[4] Instead he delegated the decision to the Department of Corrections employees. To nobody's surprise, they said he should keep Lemons in handcuffs and leg irons. That delegation was particularly dangerous here where all of the defendants were also Department of Corrections employees, so that the decisionmaker could hardly be called impartial. When the trial judge delegates a decision, and gives no reason for the decision, that is not an exercise of discretion but an absence of and an abuse of discretion.

3. Similarly, if we look to the cases in which courts have limited prisoners' rights to be present at civil trials, we see a similar inquiry is necessary. Courts have held that prisoners do not have a constitutional right to be present at trials of civil suits they may file. *Jones v. Hamelman,* 869 F.2d 1023, 1029–30 (7th Cir.1989); *Stone v. Morris,* 546 F.2d 730, 735 (7th Cir.1976). The defendants argue that if a prisoner can be barred from being present altogether, then he can surely be required to wear shackles while present. However, these cases are not that simple. The *Stone* court held, and the *Jones* court reaffirmed, that:

> The fact that there is no constitutional right to be present in a civil action does not sanction the summary exclusion of a plaintiff-prisoner from the trial of his prison-connected civil rights claim. Rather the trial judge must weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner.

*Stone,* 546 F.2d at 735. In this case, there was no balancing of interests, no exercise of discretion; there was simply abdication to the Department of Corrections.

In addition, the defendants' analysis—"if you can exclude you can shackle"—sidesteps the proper inquiry which is how the action may prejudice a fair trial. It is possible that in some

cases a prisoner's testimony is irrelevant or unnecessary, so that a fair trial may be had without his presence. That was not the case here, and in fact if Lemons' testimony had not been necessary, it probably would have prejudiced the jury less to not see Lemons at all than to see him in handcuffs and leg irons. But his presence and his testimony was necessary and he should not have been summarily prejudiced in giving it.

4. The *Samuel* court stated that "[A]ccommodation between these conflicting interests lies within the discretion of the district judge. It is he who is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the court room, escape of the accused, and the prevention of other crimes.... We stress that the discretion is that of the district judge. He may not, as is suggested at one point in the record before us, delegate that discretion to the Marshal. Of course, he should consult with the Marshal when other than ordinary security such as the general presence of guards in the courtroom is contemplated, and he may rely heavily on the Marshal's advice.... Unless the district judge's discretion is to be absolute and beyond review, the reasons for its exercise must be disclosed in order that a reviewing court may determine if there was an abuse of discretion."

Upon remand, the new trial judge should hold a hearing to determine what, if any, restraints are necessary. Even if, as seems unlikely under the circumstances, the judge determines that, in Mr. Lemons case, there is an "extreme need" justifying restraints, a new trial will still be necessary for several reasons. First, Lemons is entitled to the minimum restraints necessary, and a determination that some restraints are appropriate does not mean that leg-irons and handcuffs are required. Second, although the magistrate judge said that he would give a curative instruction to the jury, none was ever given. Third, there are various ways to minimize the appearance of restraints, and therefore minimize the likelihood of prejudice to the jury, and none of these ameliorative steps were taken. As this court has noted, "the harm to be avoided in this situation is not the shackling itself but the prejudice that could result if the jury were allowed to continuously view the defendant restrained in that manner." *Harrell* at 637.

In several cases where this court has approved the use of restraints, steps were taken to minimize the appearance of shackles. In *Harrell*, the court ordered that the jury not be brought into the courtroom until the defendant was seated, and made arrangements for shackled witnesses to enter and leave the witness box when the jury was not present. Handcuffs were not used, and leg-irons were less obtrusive when hidden by a table or witness box. In *Amaro*, the court also ordered that people in the courtroom not be asked to rise when he entered, because that would draw attention to the prisoner's leg-irons. Finally, in *United States v. Fountain*, 768 F.2d 790, 794 (7th Cir.1985), curtains were used as skirts on the counsel tables, which then hid from view the leg-irons worn by the defendants. If, after a hearing, the trial court determines that some restraints are necessary, similar efforts should be made to minimize them and their prejudice to the jury.

[7] The defendants argue finally that any error was harmless. Harmless error has been defined as:

An error (other than a constitutional error) is not harmless if it "results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'"

*United States v. Beasley*, 809 F.2d 1273, 1280 (7th Cir.1987) (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986), quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). In this case, as in the criminal cases, the error undoubtedly prejudiced the defendant before the jury, and so had an "injurious effect or influence in determining the jury's verdict." The error here goes to the central issue in the case. The use of handcuffs and leg irons suggested to the jury that the plaintiff was dangerous and violent, so that whatever force the guards had used was probably necessary, and not excessive.

Finally, the defendants say the evidence was so overwhelming that any prejudice was irrelevant. However, there was physical evidence—Lemons' scars and limp—that was inconsistent with the story that all the guards told.[5] Thus, the evidence cannot be said to be so one-sided that the error was harmless.

We reverse and remand for a hearing on the necessary level of restraints, if any, to be followed by a new trial.

---

**5.** Although all of the defendants testified that Lemons was hit only once with a bare fist, there were scars on Lemons' face that he said were caused by their blows with handcuffs. Even one of the guards admitted that he did not think Lemons had those scars previously. Lemons also claimed that he had back pain and walked with a limp. Finally, he reported problems with his one good eye "pulling" and being sensitive to light (he lost one of his eyes when he was a youngster).