Joe WOODS, Plaintiff–Appellant,

v.

James H. THIERET and Dennis Hasemeyer, Defendants– Appellees.

No. 92–2820.

United States Court of Appeals, Seventh Circuit.

Submitted May 26, 1993.*

Decided Sept. 15, 1993.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Joe Woods, pro se.

Eve Moran, Asst. Atty. Gen., John P. Schmidt, Civil Appeals Div., Chicago, IL, for defendants-appellees.

Before CUMMINGS, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Inmate Joe Woods sued prison officials at the Menard Correctional Center under 42 U.S.C. § 1983, alleging that the officials violated the Eighth Amendment by not feeding him when he was deadlocked in his cell between June 27 and June 29, 1986. A jury found for the defendants. Woods then moved for judgment as a matter of law under Fed.R.Civ.P. 50(b), arguing that the evidence was insufficient to support the verdict but the court denied that motion. He then moved for a new trial under Fed.R.Civ.P. 59(a) on the ground that the appearance of his witnesses in prison garb and leg and arm restraints during trial prejudiced his case. The court denied that motion as well. Woods appeals the denial of both decisions.

■ Review of the plaintiff's appeal plaintiff of the Rule 50(b) motion is impossible because the plaintiff has failed to include a trial transcript in the appellate record. Federal Rule of Appellate Procedure 10(b)(2) states: "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." In moving for judgment as a matter of law, Woods was effectively arguing that there was no reasonable basis for the jury's verdict. *Winston Network, Inc. v. Indiana Harbor Belt R. Co.*, 944 F.2d 1351, 1358 (7th Cir.1991). It is necessary that we review the transcript to decide whether such a basis existed. Because Woods has failed to produce a transcript or demonstrate that one is unavailable, we are in no position to determine whether there was a reasonable basis for the jury's verdict. Thus we must dismiss the appeal. *Deines v. Vermeer Mfg. Co.*, 969 F.2d 977, 979 (10th Cir.1992); *Syncom Capital Corp. v. Wade*, 924 F.2d 167, 169 (9th Cir.1991) ("[b]ecause we lack a transcript detailing what these facts might be, we are not in a position to review this appeal"); *Richardson v. Henry*, 902 F.2d 414, 416 (5th Cir.) ("[t]he failure of an appellant to provide a transcript is a proper ground for dismissal of the appeal"), *cert. denied*, 498 U.S. 901, 111 S.Ct. 260, 112 L.Ed.2d 218 (1990); *Fisher v. Krajewski*, 873

F.2d 1057, 1061 (7th Cir.1989) ("[i]t is obvious that an appellate court has no alternative but to dismiss an appeal if the absence of the transcript precludes meaningful review"), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 738 (1990); Fed.R.App.P. 3(a).

The second issue requires further elucidation. Woods, who wore civilian clothing throughout the trial, argues that it was prejudicial for his inmate-witnesses to appear in prison clothing as well as leg and arm restraints. He claims that the restraints and prison clothing served to undermine the witnesses' credibility. *See United States v. Garcia,* 625 F.2d 162 (7th Cir.), *cert. denied,* 449 U.S. 923, 101 S.Ct. 325, 66 L.Ed.2d 152 (1980). The Supreme Court recognized and addressed the potential risk prisoners place on courtroom security in *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970), and stated, "[i]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country." *Id.* In *Harrell v. Israel,* 672 F.2d 632, 637 (7th Cir.1982), this court addressed the "danger" certain prisoners may pose to courtroom security, and stated, "[l]ess intrusive methods of insuring security, such as stationing guards around the courtroom, would probably be less effective and may have an even more detrimental impact on the jury than shackles." *Id.* Because of the lack of respect for law and order in our society, manifested by the utter disregard for human life and the increase in violence in today's world,[1] we are seeing an escalating number of violent prisoners appear in our courtrooms.[2] Thus the trial courts must be ever-vigilant in addressing the risk each defendant, witness or court spectator poses to courtroom security and escape.

The foundational principles important to deciding the case before us emerged from *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353, a Supreme Court case in which an unruly criminal defendant was removed from the courtroom because of his violent and obstructive behavior. Although the facts in *Allen* involve a criminal defendant, the principles from *Allen* have been extended to include not just criminal defendants, but inmates bringing civil actions and inmate-witnesses as well. *See, e.g., Lemons v. Skidmore,* 985 F.2d 354, 357 (7th Cir.1993). In *Allen,* the pro se defendant repeatedly disrupted the trial with his outbursts including vile, abusive, and threatening language directed at the judge, as well as tearing and throwing his file-folder full of case notes. *Id.* 397 U.S. at 339–41, 90 S.Ct. at 1058–60. After ignoring a number of admonitions and warnings, the trial court ordered that the defendant be removed from the courtroom. Upon conviction, the defendant appealed to the U.S. Supreme Court claiming his removal from the courtroom violated his Sixth Amendment right to confrontation. The Supreme Court rejected his argument and set out the following guidelines to deal with unruly courtroom defendants depending on the particular circumstances: (1) binding and gagging, (2) citing for contempt, and (3) removal from the courtroom. *Id.* at 344, 90 S.Ct. at 1061. Regarding the binding and gagging of a defendant, the Court concluded that the jury viewing the defendant shackled and gagged may prejudice the defendant and thus should only occur as a "last resort." *Id.*[3]

No reasonable reading of *Allen* can be interpreted as preventing a trial court from taking steps to restrain a potentially dangerous and disruptive inmate, witness, or any other person in the courtroom. *Allen*

---

**1.** Evidence of the violence within the legal profession itself appeared just recently as a deranged individual left eight victims after a bloody rampage through the office of a large San Francisco law firm.

**2.** Regarding the risk of violence in federal courthouses, the U.S. Marshals and Court Security officers have detected 350,000 weapons (knives or guns) since 1987. Moreover, during that same period of time there have been over 2000 threats to the judiciary. U.S. Marshal Service,

Court Security Statistics (1993). In 1992, a court security officer and a U.S. Marshall were fatally wounded by a prisoner while escorting him back to the jail from a court hearing at the federal courthouse in Chicago, Illinois. (The prisoner died of a self-inflicted gunshot wound). *Id.*

**3.** "Citing for contempt" and "removal from the courtroom" are not issues in the case before us.

addressed the prejudice resulting from a jury viewing a criminal defendant being gagged and shackled. Having a defendant appear in court gagged and shackled to restrain him from loud and disruptive outbursts is far more prejudicial than just shackles or handcuffs because the jury cannot help but notice the gag. On the other hand, handcuffs and/or leg shackles may be kept from the view of the jurors. Thus, *Allen* must not be read to bar a trial court from appropriately responding to a prisoner (party or witness) who is potentially dangerous or demonstrates a proclivity toward disruption.

■ Trial courts have always had the authority to maintain courtroom security and since *Allen*, we have held that a court may restrain an inmate who is a party or witness when it is "necessary to maintain the security of the courtroom." *United States v. Amaro*, 816 F.2d 284, 285 (7th Cir.), *cert. denied*, 481 U.S. 1031, 107 S.Ct. 1961, 95 L.Ed.2d 532 (1987); *Harrell*, 672 F.2d at 636. This standard provides trial courts with considerable leeway in determining whether inmates must be shackled in court, yet for some unknown reason, many cases have held that prisoners and prisoner-witnesses subpoenaed on their behalf may not be required to appear in shackles except in a case of "extreme need." *See Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir.1993), citing *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970); *Harrell v. Israel*, 672 F.2d 632, 635–36 (7th Cir.1982); *United States v. Roustio*, 455 F.2d 366, 371 (7th Cir.1972). Although "extreme need" appears at first blush to be a very high standard, we must remember that in *Amaro* we defined it quite broadly to mean restraints are "necessary to maintain the security of the courtroom." The analysis used to determine when restraints are necessary in criminal cases is also applicable in civil cases, *Lemons*, 985 F.2d at 357, and in each instance the trial court has wide discretion. *Amaro*, 816 F.2d at 285; *Harrell*, 672 F.2d at 636.

In *Lemons v. Skidmore*, 985 F.2d 354, we remanded a prisoner's case for a new trial because the trial judge failed to determine whether restraints on the inmate-plaintiff were necessary (the magistrate delegated the decision to shackle the inmate to the Department of Corrections rather than making the determination himself). *Id.* at 358. The question of possible prejudice from the shackles in *Lemons* was far greater than that in the present case because the central question before the jury in *Lemons* was whether the shackled inmate-plaintiff was dangerous. "The shackles suggest to the jury in a civil case that the plaintiff is a violent person. Since plaintiff's tendency towards violence was at issue in this case, shackles inevitably prejudiced the jury." *Id.* at 357. Although we expressed concern for prejudice in *Lemons*, we were still cognizant of other interests such as preventing the escape of the prisoner and maintaining the safety of other persons in the courtroom including the judge, jurors, witnesses, attorneys, parties, court reporters, clerks and the general public. *See id.* at 357–59. *Lemons* required the district court on remand to determine if restraints were necessary, and if so to employ them in a way that "minimizes" their prejudice. *Id.* at 359.

■ To resolve the conflict between prejudice and the need to maintain courtroom security in today's era of escalating violence, several circuits apply a balancing test to determine when and how to restrain a prisoner in the courtroom. *See United States v. Nicholson*, 846 F.2d 277 (5th Cir. 1988); *Stewart v. Corbin*, 850 F.2d 492 (9th Cir.1988), *cert. denied*, 490 U.S. 1016, 109 S.Ct. 1737, 104 L.Ed.2d 175 (1989) (the right to trial and the presumption of innocence must in some circumstances bow to the competing concerns of courtroom safety); *Allen v. Montgomery*, 728 F.2d 1409, 1413 (11th Cir.1984) (balancing of the presumption of innocence against the court's application of courtroom security); *Billups v. Garrison*, 718 F.2d 665, 668 (4th Cir.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 91, 83 L.Ed.2d 37 (1984); *United States v. Theriault*, 531 F.2d 281, 284 (5th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976). Balancing of interests (prejudice to the prisoner versus security and escape) is best achieved after the problem is timely raised by the defendant and the court holds a hearing outside the presence of the jury to determine the threat an individual prisoner (party or

witness) poses to courtroom security as well as his risk of flight. *See Lemons*, 985 F.2d at 358. At the hearing, the judge is entitled to rely on a variety of sources including but not limited to the prisoner records, witnesses, correctional and/or law enforcement officers and the federal marshals whose statutorily defined duties include: "provid[ing] for the personal protection of Federal jurists, court officers, [and] witnesses...." 28 U.S.C.A. 566(e) (West Supp.1993). While the trial court may rely "heavily" on the marshals in evaluating the appropriate security measures to take with a given prisoner, the court bears the ultimate responsibility for that determination and may not delegate the decision to shackle an inmate to the marshals. *See, e.g., Lemons*, 985 F.2d at 358 & n. 4; *United States v. Ellender*, 947 F.2d 748, 760 (5th Cir.1991); *United States v. Weeks*, 919 F.2d 248, 250 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1430, 113 L.Ed.2d 481 (1991); *United States v. Samuel*, 431 F.2d 610, 615 (4th Cir.1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971). After considering the relevant information as to the prisoner's proclivity toward disruptive and/or violent conduct, the judge must then determine whether the prisoner (party or witness) poses a risk to courtroom security, risk of disrupting the proceeding or a risk of flight. If the judge concludes the prisoner presents a risk, he may order the use of restraints, whether it be arm and/or leg,[4] but at the same time attempt to prevent the jury from viewing

those restraints. The court may accomplish this by directing that the prisoner be seated at the counsel's table or at the witness stand before the jury returns to the courtroom. *See Amaro*, 816 F.2d at 285 (discussing the trial court's attempt to prevent the jury from viewing the restraints) citing *Harrell*, 672 F.2d at 636.[5] Once the prisoner is seated at the counsel's table or on the witness stand the jury would be unable to view the restraints unless the prisoner takes steps to display them. Permitting the court to impose restraints in the above described manner, yet attempting to prevent the jury from viewing those restraints is an efficient means of maintaining security without prejudice to prisoners in court when and if the court determines restraints are necessary.

■ In the case before us, the magistrate presiding over the trial approved the use of restraints for several reasons: (1) the poor design of the courtroom required inmate-witnesses to travel through the courtroom in close proximity to the bench, counsel tables and jury box to reach the stand, (2) the number of inmate-witnesses (five) entering and exiting the courtroom, (3) the presence of only one court security officer in the court,[6] and (4) the travel documents accompanying the inmates revealed their potential dangerousness.[7] As previously stated, a trial judge has wide discretion in determining when and what restraints are required in the courtroom. In this instance, we are of the opinion the magistrate correctly determined

---

**4.** As the Supreme Court stated in *Allen*, in the case of a defendant making repeated loud and disruptive outbursts, one procedure, although only to be used as a "last resort," may be to gag the defendant. This procedure maintains order in the courtroom while at the same time protects against any denial of the defendant's Sixth Amendment right of confrontation. *See Allen*, 397 U.S. at 344, 90 S.Ct. at 1061.

**5.** Courts have generally found inadvertent sightings of shackles by the jury to be insufficient to demonstrate prejudice. *Harrell*, 672 F.2d at 637 (listing cases in which no prejudice occurred because of inadvertent sighting).

**6.** In addition to the court security officer, the inmates were accompanied into the courtroom by Illinois Department of Corrections officers who remained in court while each inmate testified.

**7.** The inmates had all been in a maximum security prison for an assortment of violent crimes:

Ellis Partee: convicted of armed robbery (twice); attempted armed robbery; and three counts of aggravated battery;
Wilford Mackey: convicted of murder and armed violence;
Devoshia Gray: convicted of murder;
Jesse Hill: convicted of armed robbery (twice); and aggravated battery (twice);
Glenn Smith: convicted of rape; armed robbery (four times); deviate sexual assault; and aggravated battery (twice).

It is quite obvious that a prisoner with a violent criminal history and serving a long prison sentence is more likely to disrupt the courtroom or attempt an escape because he may mistakenly believe he has nothing to lose.

the inmates posed a threat in the courtroom and restraints were "necessary to maintain the security of the courtroom." *Amaro*, 816 F.2d at 285. The five inmates were undeniably dangerous as evidenced from their criminal records which include two murders, numerous armed robberies, rape and aggravated assault. *See supra* note 7. Their violent criminal histories combined with the long route through the courtroom, (placing the inmates in close proximity to the bench, counsel tables, and jurors), the number of inmates moving through the court, and the minimal number of security officers present at any given time made it appropriate for the court to order the witnesses shackled when in the courtroom.

This case is analogous to *Holloway v. Alexander*, 957 F.2d 529 (8th Cir.1992), in which the Eighth Circuit ruled in an inmate's § 1983 suit against prison officials that it was not prejudicial to require the inmate and his witnesses to wear shackles. The court reasoned that because the question to be decided by the jury dealt with living conditions inside a maximum security prison the jury most assuredly would have known that the plaintiff and witnesses were inmates of the prison and thus "the shackles added nothing to the trial ... [for] '[n]o prejudice can result from [the jury] seeing that which is already known.'" *Id.* at 530 (quoting *Estelle v. Williams*, 425 U.S. 501, 507, 96 S.Ct. 1691, 1694, 48 L.Ed.2d 126 (1976). The court added that "[a]ny general prejudice caused by the presence of the shackles was cured when the district court admonished the jury to disregard the shackles in their consideration of [the] case." *Id.* The court concluded that the only issue for the jury was the living conditions within the prison and the mere fact that the plaintiff and witnesses posed a security risk in the courtroom was not relevant to determining the prevailing prison conditions. *Id.*

In the instant case, as in *Holloway*, the shackles could not have resulted in prejudice because the jury was well aware of the fact that the witnesses were inmates in a maximum security prison. Moreover, we are of the opinion in the case at bar that the court took the appropriate steps to minimize any prejudice that may have occurred from the jury viewing the witnesses in shackles. Not only did the trial judge remove the jury from the courtroom while the inmates were escorted to and from the witness stand,[8] but the court went even further and gave a curative instruction advising the jury to disregard the restraints when assessing the testimony. *See United States v. Neely*, 980 F.2d 1074, 1087 (7th Cir.1992); *United States v. Wright*, 943 F.2d 748, 752 (7th Cir.1991). The cases recognize that taking steps to reduce the visibility of restraints and the giving of limiting or curative instructions dealing with the shackles are appropriate methods of eliminating potential prejudice against inmate witnesses. *Lemons*, 985 F.2d at 359; *Holloway*, 957 F.2d at 530; *Amaro*, 816 F.2d at 285; *Harrell*, 672 F.2d at 637. The precautions the magistrate took in the case before us served to maintain court security and minimize prejudice to the plaintiff Woods. Based on our review of the record and the magistrate's opinion denying Wood's motion for a new trial, we are convinced that no prejudice resulted from the witnesses being shackled.

■ Finally, the appellant argues that it was prejudicial for his witnesses to appear in prison clothing. We reiterate that because the case involved an inmate's lawsuit against prison guards—the very subject matter of the lawsuit dealt with the prison authorities failing to feed him while he was deadlocked— the jury would certainly be made aware of the fact that these witnesses were prisoners no matter what they wore, thus the possibility of prejudice was nonexistent.[9] *Holloway*, 957 F.2d at 530; *Amaro*, 816 F.2d at 286.

8. The magistrate adopted this procedure after Woods moved for a mistrial on the grounds of prejudice because his first two inmate-witnesses had been shackled as the guards escorted them from the holding cell passed the jury to the witness stand.

9. The magistrate commented on the record that the prison clothing did not visibly identify the witnesses as prisoners. He stated that the prison garb included "navy blue slacks and a light blue shirt." In *United States v. Martin*, 964 F.2d 714, 720 (7th Cir.1992), we held that the prison clothing was not prejudicial because it did not identify the individual as a prisoner. *See id.*

The potential harm of shackles—that they make the jury think the witnesses are dangerous or violent—is not present when a witness merely wears prison clothing. Thus, the credibility of inmate witnesses could not be undermined by their attire. *See Holloway*, 957 F.2d at 530; *Amaro*, 816 F.2d at 286; *United States v. Fountain*, 768 F.2d 790, 794 (7th Cir.1985), *cert. denied, Gometz v. United States*, 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986).

DISMISSED in part and AFFIRMED in part.