Barbara J. LaFOLLETTE and Corrections Telecom, Incorporated, Plaintiffs–Appellants,

v.

Gary SAVAGE, Corrections Telecom Group, Incorporated, John Dietler, and Pat Dietler, Defendants–Appellees.

No. 94–3100.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 6, 1995.

Decided Aug. 11, 1995.

Rehearing Denied Oct. 18, 1995.

Bronson C. LaFollette, Madison, WI, Michael J. Luebke (argued), Atterbury, Riley & Luebke, Madison, WI, for Barbara J. LaFollette and Corrections Telecom, Inc.

Kevin J. Palmersheim (argued), J. Thomas Haley, Haley Law Office, Middleton, WI, for Gary Savage and Corrections Telecom Group, Inc.

John Dietler, Sacramento, CA, pro se.

Pat Dietler, Sacramento, CA, pro se.

Before MANION and ROVNER, Circuit Judges, and NORGLE, District Judge.*

ILANA DIAMOND ROVNER, Circuit Judge.

This diversity case involves a business partnership that went sour. Plaintiffs Barbara J. LaFollette and Corrections Telecom, Incorporated ("CTI") contend that defendant Gary Savage, CTI's former president, converted corporate assets and, after forming a competing company, diverted CTI's business opportunities. The case was tried to a jury, which returned a special verdict absolving Savage and the other defendants of any liability on plaintiffs' claims. The district court subsequently denied plaintiffs' post-trial motions, and they now appeal, contending that they are entitled either to judgment as a matter of law on their claims for conversion of corporate assets and diversion of corporate opportunities, or alternatively, to a new trial. We are unable to consider the majority of plaintiffs' arguments, however, because they failed to include in the record on appeal either a complete transcript of the trial testimony or any of the numerous documentary exhibits considered by the jury. We accord-

---

* The Hon. Charles R. Norgle, Sr., of the Northern District of Illinois, sitting by designation.

ingly dismiss the bulk of plaintiffs' appeal and otherwise affirm the judgment below.

## I.

We recite the facts as best we can from the limited record available to us. Savage and LaFollette met at a trade show sometime prior to August 1991. At the time, Savage already had formed "Corrections Telecom Company," which was engaged in marketing telecommunications services to correctional facilities. In September or October 1991, Savage became an independent agent for Paytel of America ("Paytel"), a telephone service provider. As Paytel's independent agent, Savage attempted to procure contracts for Paytel to provide telephone service to correctional facilities. A month or two later, Savage helped LaFollette establish a similar agency relationship with Paytel.

In May or June of the following year, Savage and LaFollette decided to go into business together, and they incorporated CTI. This new venture was intended to expand upon the work Savage and LaFollette had been doing as independent Paytel agents, in that CTI would procure contracts with correctional facilities for Paytel or other telephone service companies, earning a commission plus residuals on each line the telephone company installed. LaFollette's husband Bronson, an attorney, drafted CTI's incorporation papers and other corporate documents. Savage and LaFollette were CTI's sole shareholders, and initially they each owned fifty percent of the corporation's stock. Savage was CTI's president and secretary while LaFollette served as vice president and treasurer. The two agreed that the corporation's profits would be split evenly between them. In the fall of 1992, Savage transferred two of his CTI shares to LaFollette, making LaFollette the majority shareholder and qualifying the company for certification as a minority-owned business. The transferred shares were placed in escrow, however, so that LaFollette would not gain a controlling interest in CTI, and she and Savage continued to split the corporation's profits evenly.

At about the same time that they formed CTI, Savage and Lafollette met John and Pat Dietler, who had many contacts within the corrections field in the State of California. The Dietlers agreed to become CTI's agents in California and to attempt to procure contracts with California correctional facilities. Under their arrangement, CTI agreed to pay the Dietlers a commission plus residuals on each telephone line sold, and the Dietlers agreed to cover their own expenses. Yet because the Dietlers soon began to incur fairly significant travel expenses, Savage realized that the only way to retain their services was to begin paying their travel expenses, and he committed to do so on behalf of CTI. LaFollette, however, who served as CTI's treasurer, refused to reimburse the Dietlers for any of their travel expenses. To meet his commitment, then, Savage himself reimbursed the Dietlers for $30,000 in travel expenses in 1993.

A dispute also developed between Savage and LaFollette over Savage's own expenses. It seems that Savage was traveling on behalf of the corporation far more than LaFollette, and he thus was incurring more significant expenses. He also was incurring expenses relating to trade shows and other promotional events. Indeed, Savage's expenses in some months were four or five times those of LaFollette.[1] Savage expressed concern to LaFollette that if CTI did not reimburse him for these expenses, she would be receiving more than her fair share of the corporation's profits because they were simply splitting CTI's gross profits. LaFollette, however, had exclusive control over the corporation's checkbook, and she chose to ignore Savage's concerns. Thus, to honor his commitment to the Dietlers and to cover additional expenses he had already incurred on CTI's behalf, Savage instructed Paytel's President, Randall Thompson, to send four commission checks owed to CTI directly to Savage rather

---

1. The impression we have from Savage's own testimony is that he was doing more than LaFollette to attempt to procure business for CTI. We trust that we would get a different impression from the testimony of LaFollette, but plaintiffs did not designate the transcript of her testimony for inclusion in the record on appeal.

than to LaFollette as CTI's treasurer.[2] The four checks, which totaled $68,000, form the basis for plaintiffs' conversion claim, as those checks were made out to Savage rather than to CTI. Savage deposited the Paytel checks in his own account and used the funds to reimburse the Dietlers and himself for corporate expenses. On at least one and perhaps two prior occasions, Savage had similarly instructed Thompson to send Paytel commission checks directly to him rather than to LaFollette. On those earlier occasions, however, LaFollette had been on an extended vacation, and Savage did not want to delay the deposit of Paytel's commission checks until her return. He thus would deposit the Paytel checks in his own account in Texas and then write a personal check for deposit in CTI's account in Wisconsin, thereby enabling CTI to cover its expenses while LaFollette was away.

By 1993, many of CTI's customers began to experience difficulties with the telephone service provided by Paytel, and Savage was required to expend a significant amount of his time attending to these difficulties. Because correctional facilities associated CTI with Paytel, they attributed their service problems also to CTI, and CTI's reputation therefore became tainted. Indeed, none of the correctional facilities serviced by CTI and Paytel were willing to renew their contracts after expiration of the initial one-year terms. Savage therefore began to negotiate with another telephone company to replace Paytel as CTI's service provider, but some of CTI's customers also insisted that Savage have another corporation in place to replace CTI before they would enter into contracts for telephone service. Thus, Savage incorporated a separate company, Corrections Telecom Group, Inc. ("CTG"), and along with the Dietlers, he began to solicit contracts with correctional facilities for CTG. Savage, however, did not inform LaFollette about his new venture. The contracts that Savage and the Dietlers procured for CTG form the basis for plaintiffs' diversion of corporate opportunity claim.

LaFollette and CTI subsequently filed the instant action against Savage, CTG, and the Dietlers in federal court. After hearing three days of testimony, a jury returned a special verdict in favor of defendants, finding that Savage had not converted assets of CTI and that neither Savage nor the Dietlers had diverted corporate opportunities belonging to that company. The district court entered judgment on the jury's verdict after denying plaintiffs' alternative motions for judgment as a matter of law or for a new trial. On the conversion claim, the court observed that the jury had heard evidence "from which it could have reasonably determined that the corporate president had the authority to pay corporate debts with corporate funds whether or not such funds were first placed in the corporate treasury." (R. 146 at 4.) As to whether defendants had diverted any of CTI's corporate opportunities, the court explained that substantial evidence supported the jury's conclusion that the allegedly diverted opportunities were not available to CTI due to the problems customers had encountered in the past with CTI and Paytel. (*Id.* at 5.)

## II.

LaFollette and CTI now renew the argument that they are entitled either to judgment as a matter of law or to a new trial on their conversion and diversion of corporate opportunity claims. They argue that the record includes no credible evidence to support the jury's verdict in defendants' favor. We review the denial of a motion for judgment as a matter of law de novo. *De-Biasio v. Illinois Cent. R.R.*, 52 F.3d 678, 682 (7th Cir.1995). We apply the federal standard to such a motion even in a diversity case, and we will reverse the denial of the motion only if reasonable persons could not have found that plaintiffs failed to meet their burden of proving any essential element of their claims. See *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1258–59 (7th Cir.1995); *Mayer v. Gary Partners and Co., Ltd.*, 29 F.3d 330, 335 (7th Cir.1994); Fed.R.Civ.P. 50(a). Our review of the district court's denial of a motion for new trial is even more limited. The district court may grant a new trial "where the jury's verdict is against the weight of the

2. Throughout this time period, Savage lived in Texas and LaFollette in Wisconsin.

evidence" (*Sokol Crystal Prod., Inc. v. DSC Communications Corp.*, 15 F.3d 1427, 1432 (7th Cir.1994); *see also Thomas v. United States,* 41 F.3d 1109, 1120 (7th Cir.1994)), and because that decision is committed to the district court's discretion, we will not disturb it "except under exceptional circumstances showing a clear abuse of discretion." *Crossley by Crossley v. General Motors Corp.,* 33 F.3d 818, 821 (7th Cir.1994) (internal quotation omitted); *see also Sokol Crystal Prod.,* 15 F.3d at 1433. And in reviewing the denial of each of plaintiffs' motions, we view the evidence in the light most favorable to defendants and draw all reasonable inferences from the evidence in their favor. *DeBiasio,* 52 F.3d at 682.

■ Our consideration of plaintiffs' arguments is met at the outset by a rather formidable obstacle—plaintiffs included in the record on appeal only portions of the trial transcript and none of the numerous documentary exhibits admitted into evidence at trial. Fed.R.App.P. 10(b)(2) provides that:

> If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.

When the appellant makes a broad challenge to the sufficiency of the evidence to support a jury verdict, the evidence "relevant to" the jury's conclusion generally would include a complete transcript of the trial along with the exhibits properly admitted into evidence. *Cf. Stookey v. Teller Training Distrib., Inc.,* 9 F.3d 631, 635 (7th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 122, 130 L.Ed.2d 67 (1994); *Woods v. Thieret,* 5 F.3d 244, 245 (7th Cir.1993). And if the appellant chooses to include in the record less than the entire trial transcript, Rule 10(b)(3) requires that a statement be filed within ten days "of the issues the appellant intends to present on the appeal." Fed.R.App.P. 10(b)(3). That requirement affords an appellee the opportunity to designate portions of the transcript in addition to those designated by the appellant. *Id.* The failure by an appellant to comply with one or both of these requirements is grounds for dismissal of the appeal. Fed.

R.App.P. 3(a); *Stookey,* 9 F.3d at 635; *Wilson v. Electro Marine Sys., Inc.,* 915 F.2d 1110, 1117 (7th Cir.1990); *Fisher v. Krajewski,* 873 F.2d 1057, 1060–61 (7th Cir.1989), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 738 (1990). Indeed, we have held that dismissal is the appropriate course if the absence of a complete record precludes meaningful appellate review. *Stookey,* 9 F.3d at 635; *Woods,* 5 F.3d at 245; *Fisher,* 873 F.2d at 1061.

In the instant case, by asserting that they are entitled to judgment as a matter of law, LaFollette and CTI are contending that there is no reasonable basis in the trial evidence for the jury's verdict in favor of Savage. *See Woods,* 5 F.3d at 245; Fed.R.Civ.P. 50(a) & (b). Moreover, plaintiffs argue in the alternative that they at least are entitled to a new trial, thereby suggesting that the jury's verdict is against the weight of the trial evidence. *See Sokol Crystal Prod.,* 15 F.3d at 1432. Both arguments would require this court to thoroughly review the testimonial and documentary evidence admitted at trial. *See Woods,* 5 F.3d at 245; *see also United States v. Wesson,* 33 F.3d 788, 798 (7th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 773, 130 L.Ed.2d 668 (1995). Yet plaintiffs apparently believed that only a very limited portion of the trial transcript was relevant to their appeal, as they included in the record only the direct testimony and cross-examination of Savage and the direct testimony of Thompson. We are thus left in the dark as to the testimony of every other witness at trial, including (we can only surmise from the briefs, the district court docket, and the final pretrial order) the testimony of LaFollette herself, that of John and Pat Dietler (the other named defendants), and the cross-examination of Thompson. The record also contains none of the documentary exhibits admitted at trial and considered by the jury. Plaintiffs, moreover, deprived defendants of the opportunity to designate additional portions of the transcript for inclusion in the record because LaFollette and CTI failed to file the statement required by Rule 10(b)(3) once they decided to designate only portions of the trial transcript. *See Stookey,* 9 F.3d at 635; *Wilson,* 915 F.2d at 1117 n. 3; *see*

*also Garnes v. Gulf & Western Mfg. Co.*, 789 F.2d 637, 640 n. 3 (8th Cir.1986).

In contesting plaintiffs' failure to include the entire trial transcript or any of the trial exhibits, defendants maintain that the trial record was replete with factual issues for the jury on both the conversion and diversion of corporate opportunity claims. Because the jury apparently resolved those issues in defendants' favor, they argue that the evidence at trial was certainly sufficient to support the special verdicts. The district court agreed with that assessment in denying plaintiffs' post-trial motions, concluding that the jury had before it credible evidence from which it could reasonably have concluded that Savage did not unlawfully convert CTI's assets or divert CTI's corporate opportunities. (R. 146 at 4–5.)

■ We are unable to determine on the basis of the present record whether the district court should have entered judgment as a matter of law or whether the court abused its discretion in denying a new trial. Without a complete record, we would only be speculating as to the scope of Savage's authority as CTI's president to instruct Paytel to pay him directly and then to reimburse himself and the Dietlers for corporate expenses. We also have no way of knowing, particularly without the testimony of the Dietlers and the exhibits admitted at trial, whether CTI had any opportunities available to it in mid  to late 1993 that were diverted by defendants for CTG. The conversion claim, at least, appears very close from the materials provided to us, and we could only resolve the issues addressed to that claim by searching the record for additional evidence concerning Savage's authority. We therefore conclude that plaintiffs' failure to provide a complete transcript of the trial or to notify defendants of their intention to designate only a partial transcript precludes meaningful review of the denial of plaintiffs' post-trial motions. *See Woods*, 5 F.3d at 245 (court cannot review denial of motion for judgment as a matter of law where the appellant failed to produce a transcript of the trial); *see also Deines v. Vermeer Mfg. Co.*, 969 F.2d 977, 979–80 (10th Cir.1992) (partial transcript insufficient to permit review of

whether jury verdict was against the weight of the evidence); *Syncom Capital Corp. v. Wade*, 924 F.2d 167, 169 (9th Cir.1991) (dismissing appeal for failure to submit transcript where resolution of issues raised on appeal depends on facts elicited at trial); *Richardson v. Henry*, 902 F.2d 414, 416 (5th Cir.1990) (dismissing challenge to sufficiency of the evidence where the appellant failed to provide trial transcript), *cert. denied*, 498 U.S. 901, 1069, 111 S.Ct. 260, 789, 112 L.Ed.2d 218, 852 (1990 & 1991); *cf. King v. Unocal Corp.*, 58 F.3d 586 (10th Cir.1995) (dismissing appeal raising challenge to jury instructions where the appellant failed to provide a trial transcript, making it impossible for the court to determine whether the challenged instructions were warranted in light of the evidence at trial); *Great Plains Equip., Inc. v. Koch Gathering Sys., Inc.*, 45 F.3d 962, 965–66 (5th Cir.1995) (finding sufficient evidence in the transcribed portions of the record to support the jury's verdict and concluding that "[i]f testimony in the untranscribed portions . . . calls that conclusion into question, it cannot form the basis [for] reversal.").

As an alternative to dismissal, we have the authority under Fed.R.App.P. 10(e) to order plaintiffs to supplement the record to include the complete trial transcript and all relevant exhibits. *See Rodriguez v. Anderson*, 973 F.2d 550, 552 (7th Cir.1992) (when only a partial transcript was filed, court ordered submission of complete transcript within seventy-two hours of oral argument); *Garnes*, 789 F.2d at 640 n. 3 (court ordered appellant to file entire transcript after oral argument). We will not exercise that authority in the instant case, however, as LaFollette and CTI have had ample opportunity to correct the problem but have failed to do so. Indeed, despite notice of defendants' objection to the incomplete record, plaintiffs made no attempt either to supplement the record or to establish in their briefs that all materials relevant to their appeal had been included.

Because plaintiffs failed to file the statement required by Rule 10(b)(3), defendants learned of the limited record only in the course of preparing their response to plaintiffs' opening brief in this appeal. They therefore filed along with that brief a "Sug-

gestion for Affirmance without Oral Argument," contending that plaintiffs' failure to include the entire transcript or the exhibits from trial should result in summary affirmance of the district court's denial of plaintiffs' post-trial motions. Defendants included a similar argument in their responsive brief. (Def. Br. at 9–10.) Despite the drastic nature of the relief defendants requested, La-Follette and CTI failed even to address the issue in their reply brief. Thus, not only did plaintiffs fail to comply with Rule 10(b) initially, they also failed either to supplement the record once the violation was brought to their attention or to argue that the materials omitted from the record were not relevant to the issues raised in their appeal.[3] Instead, plaintiffs apparently chose simply to ignore their obvious violations of Rule 10(b). Plaintiffs' failure even to address the issue convinces us that those violations should not be excused. To promote the administration of justice while avoiding unnecessary delays, we must take the appellant's responsibilities under Fed.R.App.P. 10 seriously, and as our decision today demonstrates, we will not hesitate to dismiss an appeal when the appellant fails to abide by the requirements of that rule and then compounds its error by failing to offer any explanation for its actions. We therefore dismiss plaintiffs' sufficiency challenges to the denial of their post-trial motions.

Finally, we have considered plaintiffs' additional arguments in support of their motion for a new trial—that they were prejudiced when the district court refused to dismiss Savage's counterclaim prior to trial and when a page of defense counsel's notes from closing argument was inadvertently included in the trial exhibits provided to the jury during deliberations. The district court did not abuse its considerable discretion in refusing to grant a new trial on either ground.

DISMISSED IN PART, AFFIRMED IN PART.

---

**3.** Given the standards for granting either a motion for judgment as a matter of law or a motion for new trial, plaintiffs would have had considerable difficulty convincing us that the complete testimony of but one witness and the direct testimony of another were the only portions of the transcript relevant to their appeal.