UNITED STATES of America,

v.

Tommy EDELIN, Earl Edelin, Shelton Marbury, Henry Johnson, Marwin Mosley, Bryan Bostick, Defendants.

No. 98–264(RCL).

United States District Court, District of Columbia.

July 17, 2001.

Cary Clennon, Esq., Washington, DC, for Defendant Bostick.

Pleasant S. Brodnax, Esq., Washington, D.C., for Defendant Tommy Edelin.

James W. Rudasill, Jr., Esq., Washington, DC, for Defendant Tommy Edelin.

Richard K. Gilbert, Esq., Washington, DC, for Defendant Johnson.

Mary Davis, Esq., Washington, DC, for Defendant Earl Edelin.

Shawn Moore, Esq., Federal Public Defender for D.C., Washington, DC, for Defendant Marbury.

Jensen Barber, Esq., Washington, D.C., for Defendant Mosley.

Stephen Pfleger, AUSA, Paul Quander, AUSA, William M. Sullivan, AUSA, Washington, DC, for the Government.

## ORDER

LAMBERTH, District Judge.

The Clerk of the Court is hereby ordered to unseal this Court's Memorandum Order filed on July 17, 2001, denying defendant Tommy Edelin's Motion to Preclude Stun Belts from Capital Trial.

SO ORDERED.

## MEMORANDUM OPINION

Upon consideration of the arguments advanced by defendants Tommy Edelin, Earl Edelin, Shelton Marbury, Henry Johnson, Marwin Mosley, and Bryan Bostick, in support of defendant Tommy Edelin's Motion to Preclude Stun Belts from Capital Trial, and by the government in opposition thereto, the Court orally DENIED defendants' Motion on March 22, 2001. The Court now issues this Memorandum Opinion to set forth the reasons for denying the defendants' Motion.

## I. BACKGROUND

The charges in this case stem from an alleged large drug conspiracy in the District of Columbia. The participants in the alleged conspiracy allegedly committed fourteen murders and multiple counts of assault with intent to murder. The six defendants are charged with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, fifty grams or more of cocaine base, and one kilogram or more of heroin, in violation of 21 U.S.C. § 846; continuing criminal enterprise, in violation of 21 U.S .C. § 848(a) and (b); conspiracy to participate in a racketeer influenced corrupt organization, in violation of 18 U.S.C. § 1962(d); armed robbery, in violation of 22 D.C.Code §§ 2901 & 3202; money laundering, in violation of 18 U.S.C. § 1957; and various other violent crimes and drug related activity. One of the defendants, Tommy Edelin, faces the death penalty. The government did not to seek the death penalty against the other five defendants, although they are accused of crimes that have led to death penalty prosecution. These five defendants face the possibility of life in prison without parole.

Defendant Tommy Edelin filed a Motion to preclude the use of stun belts during the trial in this case. In a pretrial hearing on the Motion, each of the defendants, except defendant Mosley, orally moved to join defendant Tommy Edelin's Motion.[1] The Court granted the defendants' oral motions to adopt defendant Tommy Edelin's Motion. The defendants objected to the recommendation of the United States Marshals Service that they be required to wear a Remote Electronically Activated Controlled Technology ("REACT") stun belt.

## II. ARGUMENT

In his Motion to Preclude the Use of Stun Belts, defendant Tommy Edelin objected to wearing a REACT stun belt on the following grounds: "1) the device constitutes an unknown health threat to him and perhaps his counsel if triggered; 2) the device is subject to malfunction and could injure him; 3) his conduct in court during numerous previous court appearances does not justify such an extraordinary action; 4) the criteria for determining when to activate the device are over-broad and vague; 5) the device is psychologically damaging to him, even if it is not activated; 7) the device interferes with his ability to assist counsel; and 8) there has been an appalling error rate in activating the belt in other cases in which it has been used." *See Defendant Tommy Edelin's Motion to Preclude Stun Belts* at 1.

The Court does not find defendant Tommy Edelin's arguments persuasive. The Court finds the declarations submitted by the government to be credible, and the declarations are not discredited by the assertions made by the defendants. Although defendant Tommy Edelin submitted a June 1999 report by Amnesty Inter-

---

1. Defendant Marwin Mosley filed a written Motion to Adopt and Conform Tommy Ede-

lin's Initial Motion to Preclude Stun Belts, that Motion was granted in a separate Order.

national and a 1998 article from the Saint Mary's Law Journal, these attachments do not counteract the information included in the declarations submitted by the government.[2] The government's declarations clearly establish that the REACT belts at issue here do not pose an undue threat to the health of the defendants nor their counsel, that the belts are not subject to malfunction, and that there has been a very small number of accidental activations of the belt. *See Declaration of United States Marshal Donald W. Horton,* ¶¶ 9–16 (March 20, 2001); *Declaration of Dennis Kaufman,* ¶¶ 5–7, ¶ 9 (March 19, 2001). The overall rate for accidental activations of the REACT belt, when viewed in comparison with the total number of times the belts have been used on individuals in police custody is less than 2 thousandths of a percent, or .00015%. *See Declaration of Dennis Kaufman,* at ¶ 7. In fact, the United States Marshals Service has no record of any activation of a stun belt, accidental or otherwise, while worn by a prisoner or a detainee. *See Declaration of Robert D. Pettit,* at ¶ 3. Thus, any concerns the defendants may have about wearing the stun belts controlled by Deputy U.S. Marshals should be allayed.

As to the other reasons cited by defendants as grounds for disallowing the use of the belts, the Court finds that the lack of inappropriate conduct by the defendants within the courtroom should not be the deciding factor as to whether a stun belt should be used as a security measure.

The Court also finds that the criteria established by the U.S. Marshals Service for when a stun belt can be properly activated are not overly broad nor vague, that the defendants have not shown that the stun belt is psychologically damaging to them, and that the defendants have not shown that the belt interferes with the defendants' ability to assist counsel in their defense.

## III. ANALYSIS

Several Circuit Courts of Appeals and the United States Supreme Court have reviewed the issue of what security measures are appropriate when a defendant is tried before a jury. The Supreme Court held in *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), that binding and gagging an "obstreperous defendant" was constitutionally permissible to maintain courtroom order, but only as a last resort.[3]

The Sixth Circuit held that the use of physical restraints is constitutional in a criminal trial after considering the following issues:

> First, is there factual support for the trial court's assertions pertaining to the record of the defendant, the desperate situation of the defendant, and his temperament and personal characteristics? Second, is the ... courtroom and courthouse physically laid out in such a manner that less drastic means of security would suffice? Third, is the physical condition of the defendant such as to reduce or eliminate the likelihood of es-

---

**2.** *See* Amnesty International, *United States of America Cruelty in Control? The Stun Belt and other Electro–Shock Equipment in Law Enforcement* (June 1999); Shelley A. Nieto Dahlberg, *Comment: The REACT Security Belt: Stunning Prisoners and Human Rights Groups Into Questioning Whether its Use is Permissible Under the United States and Texas Constitutions,* 30 St. Mary's L.J. 239 (1998).

**3.** *Id.* at 344. It is important to recognize that the type of disruptive behavior engaged in by defendant Allen was much less dangerous to trial participants than the type of violent behavior the Court seeks to avoid in this case.

cape or acts of violence, making less drastic security measures the most reasonable course? And fourth, does the trial court have available less prejudicial but adequate means of security, i.e., guards? *Kennedy v. Cardwell,* 487 F.2d 101, 110–11 (6th Cir.1973).

The Sixth Circuit went on to explain that a "clear showing of necessity" should be made before shackles were ever used in a criminal trial. Much of the analysis of the *Kennedy* court focused on the potential for prejudice to the defendant if the jury were to see that drastic security measures were being used. This Court finds that the use of REACT belts is less likely to draw attention to security measures than the shackles and additional guards discussed by the *Kennedy* court, but nonetheless finds that the criteria established by the Sixth Circuit are helpful in determining whether the stun belts are an appropriate method for ensuring the security of the courtroom during trial. The Court, if it were to apply the standards established by the Sixth Circuit in this case, would find that the use of stun belts is appropriate.

The Seventh Circuit has also held that a defendant may be "shackled in the presence of a jury upon a showing of 'extreme need,' which has been defined as 'necessary to maintain the security of the courtroom.'" *Fountain v. United States,* 211 F.3d 429, 436 (7th Cir.2000) (quoting *Lemons v. Skidmore,* 985 F.2d 354, 358 (7th Cir.1993)). Again, the Court does not find that the use of the REACT stun belts is as obtrusive as the wearing of leg shackles; it may be that a lesser showing would be sufficient to justify the use of stun belts in order to maintain the security of the courtroom.

The Court does find that there is an extreme need for reliable security in this case, and that the stun belts suggested by the Marshals Service are the preferable method for maintaining a secure courtroom. The use of stun belts, worn under the clothes, minimizes the likelihood of prejudice to the defendants before the jury. The Court has taken other precautions to ensure that there is a minimum amount of prejudice to the defendants. The defendants are brought into the courtroom before the jury is brought in, and they are escorted from the courtroom after the jury has left. This diminishes the likelihood that the jurors will view the defendants from an angle that would allow them to see any lump under the defendants' clothing that might indicate that some restraint has been placed on the defendants. The use of the stun belts also allows the trial to take place with a smaller number of plainclothes Deputy Marshals and courtroom guards, also diminishing the potential for jury bias against the defendants. These steps, taken to minimize the prejudicial impact of security measures, is in accord with the Seventh Circuit's reasoning in *United States v. Brooks,* 125 F.3d 484, 502 (7th Cir.1997), and in *Lemons v. Skidmore,* 985 F.2d 354, 359 (7th Cir.1993).

The Tenth Circuit has addressed the issue of whether stun belts should be allowed as a security measure, but only concerned itself with whether the jury noticed the stun belt, because that might prejudice the defendant. *See United States v. McKissick,* 204 F.3d 1282, 1299 (10th Cir. 2000). The Tenth Circuit determined that there was no evidence that any jurors noticed that the defendants were wearing stun belts and refused to presume prejudice to the defendants. *Id.* This Court has attempted to decrease the likelihood that jurors will notice the stun belts worn by the defendants, and there has been no indication that any jurors have noticed the stun belts.

■ Although the defendants argue that the use of a stun belt is a violation of the Fifth Amendment[4] to the United States Constitution, the Supreme Court has held that "only the most egregious official conduct" can be said to violate substantive due process. *County of Sacramento v. Lewis,* 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The Supreme Court also established that only conduct that " 'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency" would violate substantive due process. *Breithaupt v. Abram,* 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). This Court does not find that the use of stun belts to maintain courtroom security shocks the conscience or that it interferes with rights " 'implicit in the concept of ordered liberty.' " *See United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Maintaining courtroom order and security is a legitimate goal of the Court, and the use of devices that can increase the security of the courtroom without threatening the life of any individual does not violate the Constitution. The defendants' Fifth Amendment argument fails.

## IV. APPLICATION

■ In coming to a decision on whether stun belts should be used in this trial, the Court evaluated the following factors: 1) the seriousness of the crimes charged and the severity of the potential sentences; 2) the numerous allegations of threats of violence made by the defendants against witnesses; 3) previous guilty pleas or convictions of a substantial number of the defendants to prior gun charges and/or violent crimes; 4) belligerent and threatening comments made to the Deputy U.S. Marshals by each of the defendants other than defendant Tommy Edelin; 5) allegations of gang activity, and the likelihood that associates or rivals of the alleged gang may be present at the trial; 6) the strong opinion of the U.S. Marshal for this District, particularly as it relates to knowledge of security in this courthouse and with cases of this nature; 7) potential prejudice to the defendants through the use of the stun belts; 8) likelihood of accidental activation of the stun belts; 9) potential danger to the defendants if the belts are activated; 10) the availability and viability of other means to ensure courtroom security; 11) the potential danger for the defendants and others present in the courtroom if other means are used to secure the courtroom; and 12) the existence of a clear written policy governing the activation of stun belts worn by defendants.[5]

Each of the twelve factors listed above persuades the Court that the use of stun

---

**4.** Although defendant Tommy Edelin's Motion contested the use of stun belts under the Fourteenth Amendment to the Constitution, the Court addresses the validity of the use of stun belts under the Fifth Amendment's Due Process Clause, as only federal action is involved.

**5.** The written policy informs the prisoner or detainee that the stun belt could be activated by a Deputy Marshal if the prisoner or detainee were to "Tamper with the belt[,] Fail to comply with the Deputy's verbal orders to halt movement of your person[,] Attempt to escape custody[,] take any action which indi-

cates that you may attempt to inflict bodily harm to another person[,] [or make] any intentional attempt to avoid constant visual contact by the Deputy." *See* United States Marshals Service, *Notification of Electronic Restraint Belt Use, Exhibit D* to government's *Memorandum in Opposition.* The Court finds that this notice provides guidelines for the activation of the stun belt which are neither overly broad nor impermissibly vague. These guidelines would not prevent a criminal defendant from conferring with counsel, nor assisting in his own defense.

belts as a security measure in this trial is appropriate. Five of the defendants here face the possibility of life imprisonment without parole; one defendant, Tommy Edelin, faces the possible imposition of the death penalty. The serious nature of these potential penalties may cause the defendants to overlook a potential additional sentence for crimes committed in the courtroom, including violent action against participants in the trial process.

As to the second factor listed above, the Court found credible the allegations of threats of violence by the defendants against witnesses in its Order of January 23, 2001. The Court came to the conclusion that the defendants here are dangerous and a threat to the security of the trial on the basis of the Indictment in this case and the information provided by the government to this Court. *See United States v. Edelin,* 128 F.Supp.2d 23 (D.D.C.2001); *Affidavit of Stephen Pfleger, Assistant United States Attorney,* December 18, 2000. The Indictment, supported by a finding of probable cause by the Grand Jury, includes multiple acts of violence by various defendants against potential witnesses against them. The Superseding Indictment in this case shows that the Grand Jury found probable cause to find that defendant Tommy Edelin made efforts to arrange the murders of several potential witnesses against him. *See Superseding Indictment, Count One, Overt Acts 90–93.* Defendant Tommy Edelin is also charged with arranging the murder of Ronnie Middleton, a co-defendant and a potential witness in this case. *See Superseding Indictment, Count One, Overt Act 33, and Counts 46–47.* The government proffered other information regarding an ongoing pattern of behavior by defendant Tommy Edelin and several other defendants in this case to threaten and intimidate potential witnesses and to otherwise interfere with the judicial process. The Grand Jury found probable cause to believe that the defendants committed multiple violent acts, with each defendant being charged with at least one count of murder, as well as additional counts of assault with intent to murder. The showing of probable cause, in conjunction with other information identified above, supports the government's accusations of violent acts and lends credence to the government's assertions that the defendants in this case are extremely dangerous and prone to violent acts.

The Court found in its Order of January 23, 2001 that the Indictment, in addition to information submitted by the government was sufficient to support a finding of dangerousness as to each of the six defendants. *See United States v. Edelin,* 128 F.Supp.2d 23 (D.D.C.2001). Many of the defendants in this case were either convicted of or pled guilty to gun charges and/or violent crimes. The Court's finding that the defendants are dangerous on the basis of the Indictment in this case, the prior records of several of the defendants, and the proffer of the government as to the defendants' propensity to interfere with the judicial process and threaten witnesses, leads the Court to find that the use of stun belts is appropriate in this case. The possibility of a gang connection to the defendants in this trial also increases the potential danger to witnesses and other participants in the trial proceedings. The Court remains confident that its original findings as to the dangerousness of the defendants, and the precautions taken to ensure the safety of witnesses, jurors, and the defendants, were not in error.

The Court gives credit to the allegations by the Deputy Marshals assigned to this case that the defendants, other than defendant Tommy Edelin, have made belligerent and threatening comments to the Deputy Marshals. With regard to the sixth

factor, the Court values the opinion of United States Marshal Horton as to the alternative methods of security that are available in this courthouse and in this particular case. Although the Court recognizes that it is inappropriate to defer to the judgment of another in the case of courtroom security measures,[6] the Court finds that it would be unwise to disregard the knowledge and experience of someone who has an in-depth understanding of the security needs of this courthouse and who is aware of the resources available to the Court.

As discussed *supra*, p. 4, the Court believes that the use of stun belts does not prejudice the defendants, particularly where, as here, the court limits the opportunities for the jury to observe that there is any kind of an object under the defendants' clothing. As to the eighth factor, the Court has already accepted the government's submission that the rate for accidental activation of the stun belts is less than .00015%. *See supra* p. 2.

As to the ninth factor, although the defendants argue that one of them might suffer from some unknown condition that would be aggravated by the discharge of the stun belt, their medical files at the D.C. Jail reveal no known medical conditions that would place them at undue risk for lasting harm from the stun belt. *See Declaration of Marshal Horton* at ¶ 12, *Government's Exhibit 1.* The Court will not preclude the use of a security measure because there is a remote possibility that some harm to a defendant *might* result from its use, particularly where there is a serious danger that the lack of security could lead to the serious injury of some other person.

As to the remaining three factors, the Court accepts the declaration of Marshal Horton and finds that the stun belts are the best option for providing security without weakening the presumption of innocence of the defendants. The stun belts will assist the Marshals Service in maintaining a secure courtroom, without endangering the safety of the public. Finally, the written policy of the U.S. Marshals Service as to when a stun belt should be activated is sufficiently clear to not impede the defendants from speaking with their attorneys or assisting in their own defense.

## V. CONCLUSION

Upon consideration of the factors discussed above, the has Court determined that the use of REACT stun belts is preferable to the use of other security measures, including additional Marshals within the courtroom, leg irons, leg shackles, or the use of weapons other than the stun belt to subdue the defendants in the event of dangerous behavior. Not only does the stun belt remain concealed from the jury, thus reducing the risk of prejudice to the defendants and protecting the presumption of innocence, the use of the stun belt protects others in the courtroom without placing the defendants in life-threatening danger. The Court decided before the first day of jury selection that the use of stun belts would best preserve the presumption of innocence of the defendants, the security of the courtroom, and the integrity of the judicial process. Nothing has occurred during the preceding three and a half months of trial to indicate that the Court's decision was faulty.

This Memorandum Opinion shall be filed under seal pending a verdict in this case. This will prevent this Court's decision on the stun belt issue from influencing the

---

6.  *See, e.g., United States v. Brooks,* 125 F.3d 484, 502 (7th Cir.1997).

jury in any way, as the jury is not sequestered.

SO ORDERED.