**UNITED STATES of America,**

v.

**Kevin GRAY, Rodney L. Moore, John Raynor, Calvin Smith, Timothy Handy, and Lionel Nunn, Defendants.**

**No. CR. 00–157(RCL).**

United States District Court,
District of Columbia.

Feb. 28, 2002.

Timothy J. Heaphy, Matthew G. Olsen, Amy Jeffress, Assistant United States Attorneys, Washington, DC, for the Government.

Francis D. Carter, Washington, DC, David P. Baugh, Sara Davis, Richmond, VA, for Defendant Gray.

Barry Coburn, Washington, DC, Steve J. McCool, Mallon & McCool, LLC, Baltimore, MD, for Defendant Moore.

John J. Carney, Jonathan Rubens, Carney & Carney, Jonathan Rubens, Washington, DC, for Defendant Smith.

G. Goodwin Oyewole, Washington, DC, Tom Saunders, Baltimore, MD, for Defendant Raynor.

Michael Lasley, Adgie O'Bryant, Jr., Washington, DC, for Defendant Handy.

Veronice A. Holt, Washington, for Defendant Nunn.

*MEMORANDUM OPINION*

LAMBERTH, District Judge.

Now before the Court is the Government's Motion to Use Stun Belts During Capital Trial and defendant Gray's Opposition to Government's Motion to Use Stun Belts During Capital Trial and Motion to Prevent the Use of Leg Shackles at Trial, orally joined by all other defendants. Upon consideration of the pleadings, the relevant decisions of prior federal courts, the hearing before this Court on February 27, 2002, and the record of this case, the Court GRANTED the Government's Motion to Use Stun Belts. The Court now issues this Memorandum Opinion to set forth the reasons for granting the Government's motion.

I   Background

The defendants in this case are charged in a 158–count Superseding Indictment.

All sixteen defendants are charged in count one, Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms of More of Cocaine, Fifty Grams or More of Cocaine Base and One Kilogram or More of Heroin, and Marijuana, and count three, Conspiracy to Participate in a Racketeer Influenced Corrupt Organization. At least one but not all defendants are also charged with the following: continuing criminal enterprise; first degree murder while armed and aiding and abetting; continuing criminal enterprise murder and aiding and abetting; first degree felony murder while armed and aiding and abetting; assault with intent to murder while armed and aiding and abetting; tampering with a witness or informant by killing; violent crime in aid of racketeering activity and aiding and abetting; use of interstate commerce facilities in the commission of murder-for-hire; distribution of cocaine base and heroin and aiding and abetting; unlawful possession with intent to distribute cocaine base, cocaine, and heroin, and aiding and abetting; illegal use of a firearm; and unlawful use of a communication facility. The defendants are alleged to have caused the deaths of thirty-one individuals: Alvin Henson, Anthony Dent, Darrell Henson, Marvin Goodman, Christopher Burton, Scott Downing, Henry Lloyd, Aaron Jackson, Eric Moore, Corey Royster, Andrew Robinson, Ronald Powell, Dwayne Valentine, Joseph Thomas, Marco Smith, Ricardo Bailey, Garlan Baskerville, Joseph Jones, Diane Luther, Ervon Clyburn, Richard Simmons, Demetrius Green, Rodney Faison, Roy Cobb, Jaime Pereira, Ricky Fletcher, Carlos Cardoza, William Floyd, Thomas Walker, Anthony Watkins, and Derrick Edwards. In addition, the defendants are alleged to have committed eleven attempted murders.

Several notable events in this case influence the Court's consideration of this motion. First, the Government has filed Notices of Intent to Seek the Death Penalty against two defendants, Kevin Gray and Rodney Moore. This Court has upheld the Government's Notices of Intent to Seek the Death Penalty against multiple constitutional and statutory challenges by the defendants.

Second, the Court found by a preponderance of the evidence that all defendants pose a threat to the lives and safety of witnesses, jurors, and their families. Accordingly, the Court has denied defendants' motions for pre-trial disclosure of *Brady* and *Giglio* information which reveals the identities of witnesses, and has also ordered the empanelment of an anonymous jury.

The Government has now filed a motion asking this Court to require each defendants to wear a Remote Electronically Activated Controlled Technology ("REACT") stun belt. This stun belt, described in detail in the Declaration of Dennis Kaufman (attached as Exhibit B to the Government's motion), can be activated by a United States Marshal and would deliver an eight-second, 50,000 volt shock which would temporarily immobilize the wearer. Defendant Gray, joined by the other defendants, opposes this motion because he believes that: (1) there are alternative methods of restraint that may be used; (2) the use of stun belts is prejudicial to defendant Gray because the jurors will notice, (3) defendant Gray has never behaved inappropriately during any proceeding; (4) the use of the physical restraint will make defendant Gray feel confused, frustrated, and embarrassed, and will therefore be mentally impaired; and (5) the trial is being held in the "secure" courtroom, which is outfitted with bulletproof glass, and this location diminishes the need for additional security measures.

## II Analysis

Several federal appellate courts and the United States Supreme Court have reviewed the issue of what security measures are appropriate when a defendant is tried before a jury. The bulk of those cases deal with the shackling of a defendant; there is a significant difference between the use of shackles-a heavy, loud, and obvious form of restraint-and the use of stun belts, which may be worn unobtrusively beneath clothing. Nonetheless, the prior analysis of federal courts regarding shackling and other courtroom security measures provide some guidance for this Court.

The Supreme Court held in *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), that binding and gagging an "obstreperous defendant" was constitutionally permissible to maintain courtroom order, but only as a last resort.[1] The Sixth Circuit has held that the use of physical restraints is constitutional in a criminal trial after considering the following issues:

> First, is there factual support for the trial court's assertions pertaining to the record of the defendant, the desperate situation of the defendant, and his temperament and personal characteristics? Second, is the . . . courtroom and courthouse physically laid out in such a manner that less drastic means of security would suffice? Third, is the physical condition of the defendant such as to reduce or eliminate the likelihood of escape or acts of violence, making less drastic security measures the most reasonable course? And fourth, does the trial court have available less prejudicial but adequate means of security, i.e., guards?

*Kennedy v. Cardwell,* 487 F.2d 101, 110-11 (6th Cir.1973). That court explained that a "clear showing of necessity" should be made before shackles were ever used in a criminal trial because of the prejudice that defendant may suffer if the jury is able to see that drastic security measures were needed to control the defendant. Although the use of REACT belts is less likely to draw attention to security measures than the shackles and additional guards discussed by the *Kennedy* court, the criteria established by the Sixth Circuit are helpful in determining whether the stun belts are an appropriate method for ensuring the security of the courtroom during trial.

The Seventh Circuit has also held that a defendant may be "shackled in the presence of a jury upon a showing of 'extreme need,' which has been defined as 'necessary to maintain the security of the courtroom.' " *Fountain v. United States,* 211 F.3d 429, 436 (7th Cir.2000) (quoting *Lemons v. Skidmore,* 985 F.2d 354, 358 (7th Cir.1993)). Again, the Court does not find that the use of the REACT stun belts is as obtrusive as the wearing of leg shackles; it may be that a lesser showing would be sufficient to justify the use of stun belts in order to maintain the security of the courtroom.

Preliminarily, the Court notes that it presided over the trial in *United States v. Edelin,* 98–264(RCL). Stun belts were used during that seven month trial; the Court's experience in that trial is instructive. First, there were no inappropriate activations of the stun belt. Second, the stun belts were unobtrusive. Third, it is this Court's belief that no juror was ever aware of the fact that defendants were, in

---

1. *Id.* at 344, 90 S.Ct. 1057. The Court notes that the type of disruptive behavior engaged in by defendant Allen was much less danger-
ous to trial participants than the type of violent behavior the Court seeks to avoid in this case.

**4**

fact, wearing stun belts underneath their clothing. Fourth, the use of the stun belts greatly reduced the need for additional security personnel or shackles during the trial. The Court will analyze the legal merit of the Government's motion in light of its own experience in the Edelin trial.

In deciding whether to permit the use of stun belts in this case, the Court evaluates the following factors: 1) the seriousness of the crimes charged and the severity of the potential sentences; 2) the numerous allegations of threats of violence made by the defendants against witnesses; 3) previous guilty pleas or convictions of a substantial number of the defendants to prior gun charges and/or violent crimes; 4) allegations of gang activity, and the likelihood that associates or rivals of the alleged gang may be present at the trial; 5) the opinion of the U.S. Marshal for this District, particularly as it relates to knowledge of security in this courthouse and of cases of this nature; 6) potential prejudice to the defendants from the use of the stun belts; 7) likelihood of accidental activation of the stun belts; 8) potential danger to the defendants if the belts are activated; 9) the availability and viability of other means to ensure courtroom security; 10) the potential danger for the defendants and others present in the courtroom if other means are used to secure the courtroom; and 11) the existence of a clear written policy governing the activation of stun belts worn by defendants. *See United States v. Edelin,* 175 F.Supp.2d 1 (D.D.C.2001).

Each of the eleven factors listed above persuades the Court that the use of stun belts as a security measure in this trial is appropriate. First, the defendants in this case are all facing either the death penalty or life imprisonment. Second, this Court has previously found by a preponderance of the evidence that all defendants have

exhibited a willingness to obstruct justice, and that all defendants pose a threat to the lives and safety of witnesses and their families. Third, all defendants have previously been convicted, have pleaded guilty to, or are now charged with very serious violent crimes and gun charges. Fourth, there is substantial evidence of gang activity; Counts one, two, and three allege, respectively, narcotics conspiracy, continuing criminal enterprise, and RICO conspiracy. Fifth, the United States Marshals Service has a clear preference for the use of stun belts in this case; this Court gives weight to the advice of the Marshals in making decisions concerning safety and security.

Sixth, the Court finds that there will not be undue prejudice to the defendants resulting from the use of stun belts. Although the Court does not believe that it is likely that any juror will see the stun belts, the Court will take precautions to minimize prejudice to the defendants. The defendants will be brought into the courtroom before the jury is brought in, and will be escorted from the courtroom after the jury has left. This diminishes the likelihood that the jurors might view the defendants from an angle that would allow them to see any lump under the defendants' clothing that might indicate that some restraint has been placed on the defendants. In addition, the use of the stun belts will allow the trial to take place with a smaller number of plainclothes Deputy Marshals and courtroom guards, also diminishing the potential for jury bias against the defendants. These steps, taken to minimize the prejudicial impact of security measures, is in accord with the Seventh Circuit's reasoning in *United States v. Brooks,* 125 F.3d 484, 502 (7th Cir.1997), and in *Lemons v. Skidmore,* 985 F.2d 354, 359 (7th Cir.1993).

Seventh, the Court finds that there is a low likelihood of inadvertent or inappropri-

ate activation of the stun belt. The government's declarations clearly establish that the REACT belts at issue here do not pose an undue threat to the health of the defendants nor their counsel, that the belts are not subject to malfunction, and that there has been a very small number of accidental activations of the belt. *See* Declaration of United States Marshal Donald W. Horton (February 21, 2002); Declaration of Dennis Kaufman (February 20, 2002). The overall rate for accidental activations of the REACT belt, when viewed in comparison with the total number of times the belts have been used on individuals in police custody is less than 2 thousandths of a percent, or .00015%. *See* Declaration of Dennis Kaufman (February 20, 2002). Thus, any safety or health concerns the defendants may have about wearing the stun belts controlled by Deputy U.S. Marshals should be allayed.

Eighth, the Court finds that there is no undue danger to the defendants if the belt is activated. The Declaration of Dennis Kaufman describes the extensive testing of the stun belts on animals and humans, and documents the safety of the belts. The Court is not now aware of the medical condition of any defendant that would preclude the use of stun belts. Even if there are any minor health issues, the Court will not preclude the use of a security measure because there is a remote possibility that some harm to a defendant *might* result from its use, particularly where there is a serious risk that the lack of security could lead to the grave injury of some other person.

Ninth, the Court finds that the stun belts are the most viable security measure available for use in this situation. Defendant Gray is correct to point out that this trial will be held in the secure courtroom, which is outfitted with bulletproof glass, and that this location goes some distance in allaying the need for additional security measures. Even though the trial will be held in the "secure courtroom," there is still a need for additional security measures: courthouse personnel may be at risk, and the use of the secure courtroom certainly does not guarantee that the defendants will refrain from using violence to injure other people or attempt to escape.

Tenth, there may be physical danger and certainly legal prejudice to defendants if other measures are used to secure the courtroom. If the stun belts are not used, additional Marshals must be present for all trial proceedings, and the Court might entertain the possibility of shackling the defendants. The use of the stun belts lessens the need for the presence of additional Marshals, reduces the likelihood that the Marshals might have to use more physical methods of control if an incident were to occur, and eliminates the need to shackle the defendants, which would be much more likely to prejudice the jury against the defendants.

Lastly, there is a clear written policy governing the use of stun belts. The written policy informs the prisoner or detainee that the stun belt could be activated by a Deputy Marshal if the prisoner or detainee were to "Tamper with the belt[,] Fail to comply with the Deputy's verbal orders to halt movement of your person[,] Attempt to escape custody[,] take any action which indicates that you may attempt to inflict bodily harm to another person[,] [or make] any intentional attempt to avoid constant visual contact by the Deputy." *See* United States Marshals Service, Gov. Motion for Use of Stun Belts in Capital Trial, exhibit D. The Court finds that this notice provides guidelines for the activation of the stun belt which are neither overly broad nor impermissibly vague. These guidelines would not prevent a criminal defendant from conferring with counsel, nor assisting in his own defense.

### III   Conclusion

Upon consideration of the factors discussed above, the has Court determined that the use of REACT stun belts is preferable to the use of other security measures, including additional Marshals within the courtroom, leg irons, leg shackles, or the use of weapons other than the stun belt to subdue the defendants in the event of dangerous behavior.   The stun belts remain concealed from the jury, thus reducing the risk of prejudice to the defendants and protecting the presumption of innocence, and the stun belts protect others in the courtroom without placing the defendants in life-threatening danger. The use of stun belts will best preserve the presumption of innocence of the defendants, the security of the courtroom, and the integrity of the judicial process.

This Memorandum Opinion shall be filed under seal pending a verdict in this case. This will prevent this Court's decision on the stun belt issue from influencing the jury in any way, as the jury will not be sequestered.

SO ORDERED.